# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE OF ALABAMA

IN RE:

MICHAEL ANTONIO JAMES

CASE NO. 15-32136-DHW-13

Debtor

## REGIONS BANK'S OBJECTION TO THE DEBTOR'S PLAN AND CONFIRMATION OF THE SAME

Comes now Regions Bank, and objects to the debtor's plan and confirmation of the same on the following grounds:

1. That Regions Bank is the holder of a note and an Assignment of Deposit Account owned by the debtor.

2. The debtor's plan does not provide for the payment of this secured debt, but apparently lists this debt as an unsecured claim.

WHEREFORE Regions Bank objects to the debtor's plan and confirmation of the same on the foregoing grounds.

W. L. Longshore, III
Attorney for Regions Bank

OF COUNSEL:
LONGSHORE, BUCK & LONGSHORE, P.C.
2009 Second Avenue North
Birmingham, Alabama 35203
Phone: (205) 252-7661
Fax No.: (205) 252-0812
Email: Billy3@longshorebuck.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing by depositing same in the U. S. Mail, first class, postage prepaid, to the following:

Michael Antonio James
804 County Rd 21 N
Prattville, AL 36067-7244

I hereby certify that I have served a copy of the above and foregoing by ECF Electronic Service, to the following:

Richard D. Shinbaum
Shinbaum & Campbell
P.O. Box 201
Montgomery, AL 36101

Curtis C. Reding
Chapter 13 Trustee
P.O. Box 173
Montgomery, AL 36104

on this the ___6th___ day of October, 2015.

W. L. Longshore, III



## ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Bank/App | Loan No | Account | Officer |
|---|---|---|---|---|---|---|
| $3,950.00 | 05-06-2015 | 05-15-2017 | 01725 | | | N8BX2 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** MICHAEL A JAMES
804 COUNTY 21 RD N
PRATTVILLE, AL 360677244

**Lender:** REGIONS BANK
AUTAUGA COUNTY
1901 EAST MAIN STREET
PRATTVILLE, AL 36066

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated May 6, 2015, is made and executed between MICHAEL A JAMES ("Grantor") and REGIONS BANK ("Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit account ("Account"):

Savings Account Numbith Lender

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all amounts Grantor owes to Lender, whether owed now or later. This means that every loan Grantor has now or obtains later with Lender is secured by this Agreement. This Agreement also secures all other amounts and obligations that Grantor may owe to Lender (such as an overdraft on a checking account).

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND PROMISES WITH RESPECT TO THE COLLATERAL.** Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Collateral free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Collateral, or (C) to make repairs to the Collateral then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Collateral, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Grantor will be in default under this Agreement if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or

any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** Grantor dies, becomes insolvent, or files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt.

**Taking of the Collateral.** Any creditor or governmental agency tries to take any of the Collateral or any other of Grantor's collateral in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Collateral is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Grantor to Lender immediately due and payable, without notice of any kind to Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the Alabama Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Alabama Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Agreement, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL.** Except as expressly provided herein, any controversy, claim, dispute or disagreement, whether asserted or brought in a direct, derivative, assignee, survivor, successor, beneficiary or personal capacity (any "Claim") may be resolved by BINDING ARBITRATION at the election of either party to this Agreement. Claim has the broadest possible meaning and includes, but is not limited to, any controversy, claim, counterclaim, dispute or disagreement arising out of, in connection with or relating to any one or more of the following: (1) Grantor's business relationship with Lender; (2) the performance, interpretation, negotiation, execution, collateralization, administration, repayment, modification, or extension of this Agreement; (3) any charge or cost incurred pursuant to this Agreement; (4) the collection of any amounts due under this Agreement; (5) any alleged tort or other claim arising out of or relating in any way to this Agreement, collateral under this Agreement, any account established pursuant to this Agreement, or any insurance or mechanical repair contract purchased pursuant to or in connection with this Agreement; (6) any breach of any provision of this Agreement; (7) any statement or representation made to Grantor by or on behalf of Lender; or (8) any property loss, damage or personal injury; (9) any claim, demand or request for compensation or damages from or against us; (10) any damages incurred on or about our premises or property; or (11) any of the foregoing arising out of, in connection with or relating to any agreement which relates to this Agreement or any assignment of this Agreement, or any relationship created by or resulting from this Agreement, will be settled by binding arbitration under the Federal Arbitration Act ("FAA"). This agreement to arbitrate and waiver of jury trial shall include any Claims involving Lender's current and former officers, directors, employees, agents, representatives, contractors, subcontractors, affiliates, successors or assigns, and any such Claims against any of those parties may be joined or consolidated with any related Claims against Lender in a single arbitration proceeding.

**Administration and Rules.** The arbitration will be administered by the American Arbitration Association (the "AAA") under its Commercial Arbitration Rules and, where applicable, its Supplementary Procedures for the Resolution of Consumer-Related Disputes (collectively, the "Arbitration Rules") in effect at the time the demand for arbitration is filed. In the event of a conflict between the Arbitration Rules and this Agreement, this Agreement will control, except that, in the event that the AAA determines that any provision of this Agreement does not comply with applicable standards stated in the AAA's Consumer Due Process Protocol, the standards of the Protocol will control. Lender will tell Grantor how to contact the AAA and how to get a copy of the Arbitration Rules without cost if Grantor asks Lender in writing to do so. Or, Grantor may contact the AAA directly at 1-800-778-7879 (toll-free) or at www.adr.org.

**Alternative Administration.** Should the AAA be unavailable, unable or unwilling to accept and administer the arbitration of any Claim or otherwise refuse or decline to accept, administer the arbitration of any Claim – in whole or in part and for any reason whatsoever – this agreement to arbitrate shall not fail or be invalidated as a result. Rather, in that instance, any party to the Claim may then petition a court of competent jurisdiction under 9 U.S.C. § 5 to appoint the arbitrator(s). Upon consideration of such a 9 U.S.C. § 5 petition, should the court decline or refuse to appoint the arbitrator(s), then and only then and within 30-days of a final and non-appealable decision on the matter from such court, Grantor and Lender shall each respectively pick one arbitrator, and those two arbitrators shall then, by mutual agreement and within 30-days of the selection of the second of them, select a third arbitrator. The third arbitrator so selected shall then arbitrate the Claim as the sole arbitrator, except with respect to a Claim for $150,000 or greater, in which case all three arbitrators so selected shall arbitrate the claim together, with the award and all pre-award decisions made by majority vote. In the case of any arbitration not administered by the AAA, the arbitrator(s) shall still be bound by all applicable provisions of this agreement to arbitrate and the Federal Arbitration Act. They further shall administer and conduct the arbitration under the applicable AAA Arbitration Rules, to the extent such rules may be practicably applied to an arbitration not administered by the AAA.

**Arbitration Fees and Costs.** If the AAA's Supplemental Procedures for Consumer-Related Disputes apply to Grantor's Claim or Counterclaim, and if Grantor's Claim or Counterclaim for actual damages does not exceed $10,000, Grantor will be responsible for paying one-half of the arbitrator's fees up to a maximum of $125. If Grantor's Claim or Counterclaim for actual damages exceeds $10,000 but does not exceed $75,000, Grantor will be responsible for paying one-half of the arbitrator's fees up to a maximum of $375. For such Claims or Counterclaims that do not exceed $75,000, Lender will pay all other arbitrator's fees and costs imposed by the administrator of the arbitration.

If Grantor's claim or counterclaim is a consumer-related claim for actual damages that exceeds $75,000, or if it is a non-monetary consumer-related claim or counterclaim, or if it is not a consumer-related claim or counterclaim, Grantor will be responsible for paying the administrative costs and arbitrator's fees as provided in the AAA's Commercial Fee Schedule. Additionally, in the case of a consumer-related claim or counterclaim for actual damages in excess of $75,000 or for non-monetary damages, and in the case of any non-consumer-related claim or counterclaim, the prevailing party in an arbitration proceeding may seek to recover its expenses for administrative fees and arbitrator(s)'s fees from the other party in accordance with the Arbitration Rules. Except as otherwise provided in this Agreement, the final award by the arbitrator(s) pertaining to such a Claim or Counterclaim may apportion the administrative fees and expenses and arbitrators' fees between Grantor and Lender as part of the award, as the arbitrator(s) determines is appropriate.

The fees and costs stated in this Agreement are subject to any amendments to the Arbitration Rules and fee and cost schedules of the AAA.

**ASSIGNMENT OF DEPOSIT ACCOUNT**
Loan N█████████ (Continued) Page 3

The fee and cost schedule in effect at the time Grantor submits its claim or counterclaim will apply. The Arbitration Rules permit Grantor to request a deferral or reduction of the administrative fees of arbitration if paying them would cause Grantor extreme hardship. Each party also has the option of filing an action in small claims court (or the equivalent court) for Claims or disputes within the scope of such court's jurisdiction. But if a Claim is transferred, removed or appealed to a different court, we then have the right to demand arbitration of the Claim.

Arbitrator(s). The arbitration of any Claim or any counter-Claim of $150,000 or greater shall be conducted by a panel of three arbitrators. The arbitration of any Claim or any Counter-Claim of a lesser amount shall be conducted by one arbitrator. The arbitrator(s) shall be selected from the AAA's panel of arbitrators by mutual agreement between Grantor and Lender. If Grantor and Lender cannot agree on the arbitrator(s), the procedure for appointment from the national roster as provided by Commercial Arbitration Rule 11 shall apply, except that the AAA shall not unilaterally appoint the arbitrator(s), unless the parties agree.

No Joinder of Claims; No Class Claims. Except as expressly provided in this agreement to arbitrate, to the extent permitted by law, no Claim may be joined with another dispute or lawsuit, or consolidated with the arbitration of another Claim, or resolved on behalf of a class of similarly situated persons or brought as private attorney general or on another similar representative basis. For any Claim subject to arbitration, you may not participate in a class action in court or in a class-wide arbitration, either as a plaintiff or claimant, class representative or class member.

Limitations, Defenses and Privileges. All statutes of limitation, defenses, and attorney-client and other privileges that would apply in a court proceeding will apply in and to the arbitration.

Location of Hearing. Any in-person arbitration hearing will be held at a location that is reasonably convenient to all parties, in Birmingham, Alabama, where Lender's main office is located, or in the state where this Agreement was executed if Lender has a branch office in that state, or in Grantor's state of residence, with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, that determination shall be made by the arbitrator(s).

Scope. Except as otherwise expressly provided in this agreement to arbitrate, any dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the enforceability, scope, reach or validity of this agreement to arbitrate disputes or of this entire Agreement, will be decided by the arbitrator(s).

Exchange of Information. The arbitrator(s) shall establish such reasonable procedures as may be necessary for the reasonable exchange of information and materials between the parties prior to such arbitration.

Expedited Procedures. The Expedited Procedures of the Arbitration Rules shall apply in any dispute where no claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs.

Award. In rendering an award, the arbitrator(s) shall apply applicable contract terms, statutes and legal precedent and shall follow applicable rules of evidence, enforce applicable privileges, and employ applicable burdens of proof. The arbitrator(s) shall award only such relief as a court of competent jurisdiction could properly award under applicable law (and which shall be governed by the constitutional standards employed by the courts). The arbitrator(s) shall have the authority to award attorneys' fees, costs and expenses, in whole or in part, in instances where such is authorized by applicable law. The arbitration shall be in writing and shall be based on and consistent with the law of the jurisdiction which applies to the Claim and shall include a written explanation of the basis for the award under the applicable contract terms, statutes and legal precedents. Any appeal of the arbitration award will be governed by the FAA. Judgment on the arbitration award may be entered in any court having jurisdiction.

Appeal. In the event that the arbitration results in an award which imposes an injunction on Grantor or on Lender, or contains a monetary award in excess of two hundred fifty thousand dollars ($250,000.00), the award shall be reviewable on appeal initiated within 30 days of the award by a panel of three new arbitrators selected to hear the appeal under the procedure for appointment from the national roster as provided by Commercial Arbitration Rule 11 except that the AAA shall not unilaterally appoint the arbitrators for the appeal, unless you and us so agree. The decision of the panel shall be by majority vote. Such review shall reconsider anew any aspect of the initial award requested by the appealing party. Should the AAA be unavailable, unable or unwilling to accept and administer the appeal or otherwise refuse or decline to accept and administer the appeal -- in whole or in part and for any reason whatsoever or for no reason -- then the procedures for appointment of arbitrators set forth in the "Alternative Administration" paragraph above shall apply with respect to appointment of the arbitration appeal panel. The arbitration appeal panel shall apply the substantive and procedural standards normally applying to an appeal of a judgment from a trial court of competent jurisdiction. However, if the award does not impose an injunction on Grantor or on Lender or contain a money award in excess of two hundred fifty thousand dollars ($250,000.00), then the award shall not be appealable and shall only be subject to such challenges as would otherwise be permissible under the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

Self-Help Remedies and Small Claims Court. This agreement to arbitrate does not limit the right of Grantor or Lender, whether before, during or after the pendency of any arbitration proceeding, to exercise self-help remedies such as set-off, recoupment or repossession and sale of collateral, or to foreclose a mortgage with or without a court action, or to bring an action (individually, and not on behalf of a class) to obtain provisional or ancillary remedies or injunctive relief (other than a stay of arbitration) to protect the rights or property of the party seeking such relief. The taking of any of the actions described in the preceding sentence by Grantor or Lender or the filing of a court action by Grantor or Lender shall not be deemed to be a waiver of the right to demand arbitration of any Claim asserted as a counterclaim, crossclaim, third party claim or the like in response to any such action. This agreement to arbitrate does not limit Grantor's or Lender's right to file an action in small claims court for Claims or disputes within the scope of the small claims court's jurisdiction.

Transaction Involving Commerce. Grantor and Lender specifically acknowledge and agree that this Agreement evidences a "transaction involving commerce" under the FAA, and hereby waive and relinquish any right to claim otherwise. Grantor and Lender hereby acknowledge, agree and stipulate that: Lender is a multi-state banking organization engaged in interstate banking and commerce; Lender's deposits are federally insured; the funds used to fund loans such as this one are obtained, at least in part, through interstate commerce; and Lender regularly uses the services of businesses located in other states in making and administering loans and in conducting other transactions.

Severability. Except as provided in the following sentence, if any term or provision of this agreement to arbitrate disputes and waiver of jury trial is held to be invalid or unenforceable, the remaining provisions shall be enforced without regard to the invalid or unenforceable term or provision. If the prohibition against joinder of claims and class actions, or any portion thereof, is finally held to be invalid or unenforceable, the agreement to arbitrate disputes shall also be invalid and unenforceable, but the waiver of jury trial shall continue to be enforceable.

Survival of Arbitration Agreement. This agreement to arbitrate disputes will survive the payment of the Indebtedness, the termination of this Agreement, death, and bankruptcy to the extent consistent with applicable bankruptcy law.

Waiver of Right to Jury Trial. Unless this Note is governed by North Carolina law, WHETHER ANY CLAIM OR DISPUTE IS SUBMITTED TO ARBITRATION OR RESOLVED BY A COURT, GRANTOR AND LENDER VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL WITH RESPECT TO SUCH DISPUTE TO THE FULLEST EXTENT ALLOWED BY LAW.

NOTICE: This agreement to arbitrate disputes limits or waives certain of Grantor's rights. With respect to Claims Grantor is agreeing to arbitrate pursuant to this Agreement, Grantor is waiving Grantor's right to bring a court action, and, unless this Agreement is governed by North Carolina law, Grantor is waiving the right to have a jury trial on all controversies, whether settled by arbitration or by a court. When arbitration is invoked for Claims subject to arbitration, Grantor will not have the right to bring or participate in any class action or similar proceeding in court or in arbitration. Discovery may be more limited in arbitration than in a court proceeding, and the right and grounds to appeal from an arbitrator's award are more limited than in an appeal from a court judgment. Certain other rights Grantor has in a court proceeding also may not be available in arbitration.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

Amendments. What is written in this Agreement and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Agreement. To be effective, any change or amendment to this Agreement must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

Attorneys' Fees; Expenses. Grantor agrees to pay reasonable attorneys' fees not exceeding fifteen percent (15%) of the unpaid debt after default and referral to an attorney who is not Lender's salaried employee. Grantor also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

No Waiver by Lender. Grantor understands Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this

Agreement. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

Notices. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

Power of Attorney. Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

Severability. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

Successors and Assigns. Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

Survival of Promises. All promises, agreements, and statements Grantor has made in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

DEFINITIONS. The following words shall have the following meanings when used in this Agreement:

Account. The word "Account" means the deposit account described in the "Collateral Description" section.

Agreement. The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

Borrower. The word "Borrower" means MICHAEL A JAMES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

Grantor. The word "Grantor" means MICHAEL A JAMES.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

Lender. The word "Lender" means REGIONS BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

Note. The word "Note" means the note or credit agreement dated May 6, 2015, in the principal amount of $3,950.00 from MICHAEL A JAMES to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY 6, 2015.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

This Notice is required by Alabama law. In this Notice the term "you" means the Grantor named above.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

GRANTOR:

x /s/ Michael A James (Seal)  
MICHAEL A JAMES



[redacted]

REGIONS

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Bank/App | Loan No | Account | Officer |
|---|---|---|---|---|---|---|
| $3,950.00 | 05-06-2015 | 05-15-2017 | 01725 | [redacted] | | N8BX2 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MICHAEL A JAMES
804 COUNTY 21 RD N
PRATTVILLE, AL 360677244

**Lender:** REGIONS BANK
AUTAUGA COUNTY
1901 EAST MAIN STREET
PRATTVILLE, AL 36066

**Principal Amount: $3,950.00** **Interest Rate: 4.000%** **Date of Note: May 6, 2015**

**PROMISE TO PAY.** I ("Borrower") promise to pay to REGIONS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Thousand Nine Hundred Fifty & 00/100 Dollars ($3,950.00), together with interest on the unpaid principal balance from May 6, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 23 payments of $176.89 each payment and an irregular last payment estimated at $176.99. My first payment is due June 15, 2015, and all subsequent payments are due on the same day of each month after that. My final payment will be due on May 15, 2017, and will be for all principal and all accrued interest and all Regions Debt Protection fees, not yet paid. The amount of my final [redacted]ayment is estimated, and my actual final payment will be increased or decreased to account for any change in interest and Regions Debt [redacted]rotection fees, based upon when my payments are actually made. Payments include principal and interest and Regions Debt Protection fees. [redacted]nless otherwise agreed or required by applicable law, payments will be applied to accrued interest, then debt protection, then principal, then [redacted]ate charges, then miscellaneous fees; provided, that Lender reserves the right to apply payments to outstanding indebtedness and obligations in [redacted]ny order that Lender may determine in its sole discretion and Lender may change the methodology for the application of payments at any time [redacted]ithout notice to Borrower. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

[redacted]**NTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the [redacted]nterest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the [redacted]rincipal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to [redacted]y Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce [redacted]he principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without [redacted]ecourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will [redacted]emain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or [redacted]ther payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other [redacted]onditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: REGIONS BANK, AUTAUGA COUNTY, 1901 EAST MAIN STREET, PRATTVILLE, AL 36066.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. Dollars and must be received by Lender at the address shown at the beginning of this Note or as provided in any payment instructions set out on or with any billing statement or payment coupon Lender may provide. If a payment is made consistent with Lender's payment instructions but is received on a business day after the time specified in Lender's instructions for the payment method you choose to use, Lender will apply your payment to your loan on the next business day.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $100.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; or I make an assignment for the benefit of creditors. Any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. However, my death will not be an event of default if as a result of the death the indebtedness is fully covered by Regions Debt Protection fees.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Taking of the Property" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance under this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then I will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, without notice, and then I will pay that amount.

**ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL.** Except as expressly provided herein, any controversy, claim, dispute or disagreement, whether asserted or brought in a direct, derivative, assignee, survivor, successor, beneficiary or personal capacity (any "Claim") may be resolved by BINDING ARBITRATION at the election of either party to this Agreement. Claim has the broadest possible meaning and includes, but is not limited to, any controversy, claim, counterclaim, dispute or disagreement arising out of, in connection with or relating to any one or more of the following: (1) my business relationship with Lender; (2) the performance, interpretation, negotiation, execution, collateralization, administration, repayment, modification, or extension of this Note; (3) any charge or cost incurred pursuant to this Note; (4) the collection of any amounts due under this Note; (5) any alleged tort or other claim arising out of or relating in any way to this Note, collateral under this Note, any account established pursuant to this Note, or any insurance or mechanical repair contract purchased pursuant to or in connection with this Note; (6) any breach of any provision of this Note; (7) any statement or representation made to me by or on behalf of Lender; or (8) any property loss, damage or personal injury; (9) any claim, demand or request for compensation or damages from or against us;

(10) any damages incurred on or about our premises or property; or (11) any of the foregoing arising out of, in connection with or relating to any agreement which relates to this Note or any assignment of this Note, or any relationship created by or resulting from this Note, will be settled by binding arbitration under the Federal Arbitration Act ("FAA"). This agreement to arbitrate and waiver of jury trial shall include any Claims involving Lender's current and former officers, directors, employees, agents, representatives, contractors, subcontractors, affiliates, successors or assigns, and any such Claims against any of those parties may be joined or consolidated with any related Claims against Lender in a single arbitration proceeding.

**Administration and Rules.** The arbitration will be administered by the American Arbitration Association (the "AAA") under its Commercial Arbitration Rules and, where applicable, its Supplementary Procedures for the Resolution of Consumer-Related Disputes (collectively, the "Arbitration Rules") in effect at the time the demand for arbitration is filed. In the event of a conflict between the Arbitration Rules and this Note, this Note will control, except that, in the event that the AAA determines that any provision of this Note does not comply with applicable standards stated in the AAA's Consumer Due Process Protocol, the standards of the Protocol will control. Lender will tell me how to contact the AAA and how to get a copy of the Arbitration Rules without cost if I ask Lender in writing to do so. Or, I may contact the AAA directly at 1-800-778-7879 (toll-free) or at www.adr.org.

**Alternative Administration.** Should the AAA be unavailable, unable or unwilling to accept and administer the arbitration of any Claim or otherwise refuse or decline to accept and administer the arbitration of any Claim — in whole or in part and for any reason whatsoever — this agreement to arbitrate shall not fail or be invalidated as a result. Rather, in that instance, any party to the Claim may then petition a court of competent jurisdiction under 9 U.S.C. § 5 to appoint the arbitrator(s). Upon consideration of such a 9 U.S.C. § 5 petition, should the court decline or refuse to appoint the arbitrator(s), then and only then and within 30-days of a final and non-appealable decision on the matter from such court, you and we shall each respectively pick one arbitrator, and those two arbitrators shall then, by mutual agreement and within 30-days of the selection of the second of them, select a third arbitrator. The third arbitrator so selected shall then arbitrate the Claim as the sole arbitrator, except with respect to a Claim for $150,000 or greater, in which case all three arbitrators so selected shall arbitrate the claim together, with the award and all pre-award decisions made by majority vote. In the case of any arbitration not administered by the AAA, the arbitrator(s) shall still be bound by all applicable provisions of this agreement to arbitrate and the Federal Arbitration Act. They further shall administer and conduct the arbitration under the applicable AAA Arbitration Rules, to the extent such rules may be practicably applied to an arbitration not administered by the AAA.

**Arbitration Fees and Costs.** If the AAA's Supplemental Procedures for Consumer-Related Disputes apply to my Claim or Counterclaim, and if my Claim or Counterclaim for actual damages does not exceed $10,000, I will be responsible for paying one-half of the arbitrator's fees up to a maximum of $125. If my Claim or Counterclaim for actual damages exceeds $10,000 but does not exceed $75,000, I will be responsible for paying one-half of the arbitrator's fees up to a maximum of $375. For such Claims or Counterclaims that do not exceed $75,000, Lender will pay all other arbitrator's fees and costs imposed by the administrator of the arbitration.

If my claim or counterclaim is a consumer-related claim for actual damages that exceeds $75,000, or if it is a non-monetary consumer-related claim or counterclaim, or if it is not a consumer-related claim or counterclaim, I will be responsible for paying the administrative costs and arbitrator's fees as provided in the AAA's Commercial Fee Schedule. Additionally, in the case of a consumer-related claim or counterclaim for actual damages in excess of $75,000 or for non-monetary damages, and in the case of any non-consumer-related claim or counterclaim, the prevailing party in an arbitration proceeding may seek to recover its expenses for administrative fees and arbitrator(s)'s fees from the other party in accordance with the Arbitration Rules. Except as otherwise provided in this Agreement, the final award by the arbitrator(s) pertaining to such a Claim or Counterclaim may apportion the administrative fees and expenses and arbitrators' fees between me and Lender as part of the award, as the arbitrator(s) determines is appropriate.

The fees and costs stated in this Note are subject to any amendments to the Arbitration Rules and fee and cost schedules of the AAA. The fee and cost schedule in effect at the time I submit my claim or counterclaim will apply. The Arbitration Rules permit me to request a deferral or reduction of the administrative fees of arbitration if paying them would cause me extreme hardship. Each party also has the option of filing an action in small claims court (or the equivalent court) for Claims or disputes within the scope of such court's jurisdiction. But if a Claim is transferred, removed or appealed to a different court, we then have the right to demand arbitration of the Claim.

**Arbitrator(s).** The arbitration of any Claim or any counter-Claim of $150,000 or greater shall be conducted by a panel of three arbitrators. The arbitration of any Claim or any Counter-Claim of a lesser amount shall be conducted by one arbitrator. The arbitrator(s) shall be selected from the AAA's panel of arbitrators by mutual agreement between me and Lender. If Lender and I cannot agree on the arbitrator(s), the procedure for appointment from the national roster as provided by Commercial Arbitration Rule 11 shall apply, except that the AAA shall not unilaterally appoint the arbitrator(s), unless the parties agree.

**No Joinder of Claims; No Class Claims.** Except as expressly provided in this agreement to arbitrate, to the extent permitted by law, no Claim may be joined with another dispute or lawsuit, or consolidated with the arbitration of another Claim, or resolved on behalf of a class of similarly situated persons or brought as private attorney general or on another similar representative basis. For any Claim subject to arbitration, you may not participate in a class action in court or in a class-wide arbitration, either as a plaintiff or claimant, class representative or class member.

**Limitations, Defenses and Privileges.** All statutes of limitation, defenses, and attorney-client and other privileges that would apply in a court proceeding will apply in and to the arbitration.

**Location of Hearing.** Any in-person arbitration hearing will be held at a location that is reasonably convenient to all parties in Birmingham, Alabama, where Lender's main office is located, or in the county and state where this Note was executed if Lender has an office in that state, or in Grantor's state of residence, with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, that determination shall be made by the arbitrator(s).

**Scope.** Except as otherwise expressly provided in this agreement to arbitrate, any dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the enforceability, scope, reach or validity of this agreement to arbitrate disputes or of this Note, will be decided by the arbitrator(s).

**Exchange of Information.** The arbitrator(s) shall establish such reasonable procedures as may be necessary for the reasonable exchange of information and materials between the parties prior to such arbitration.

**Expedited Procedures.** The Expedited Procedures of the Arbitration Rules shall apply in any dispute where no claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs.

**Award.** In rendering an award, the arbitrator(s) shall apply applicable contract terms, statutes and legal precedent and shall follow applicable rules of evidence, enforce applicable privileges, and employ applicable burdens of proof. The arbitrator(s) shall award only such relief as a court of competent jurisdiction could properly award under applicable law (and which shall be governed by the constitutional standards employed by the courts). The arbitrator(s) shall have the authority to award attorneys' fees, costs and expenses, in whole or in part, in instances where such is authorized by applicable law. The arbitration award shall be in writing and shall be based on and consistent with the law of the jurisdiction which applies to the Claim and shall include a written explanation of the basis for the award under the applicable contract terms, statutes and legal precedents. Any appeal of the arbitration award will be governed by the FAA. Judgment on the arbitration award may be entered in any court having jurisdiction.

**Appeal.** In the event that the arbitration results in an award which imposes an injunction on me or on Lender, or contains a monetary award in excess of two hundred fifty thousand dollars ($250,000.00), the award shall be reviewable on appeal initiated within 30 days of the award by a panel of three new arbitrators selected to hear the appeal under the procedure for appointment from the national roster as provided by Commercial Arbitration Rule 11 except that the AAA shall not unilaterally appoint the arbitrators for the appeal, unless you and us so agree. The decision of the panel shall be by majority vote. Such review shall reconsider anew any aspect of the initial award requested by the appealing party. Should the AAA be unavailable, unable or unwilling to accept and administer the appeal or otherwise refuse or decline to accept and administer the appeal — in whole or in part and for any reason whatsoever or for no reason — then the procedures for appointment of arbitrators set forth in the "Alternative Administration" paragraph above shall apply with respect to appointment of the arbitration appeal panel. The arbitration appeal panel shall apply the substantive and procedural standards normally applying to an appeal of a judgment from a trial court of competent jurisdiction. However, if the award does not impose an injunction on me or on Lender or contain a money award in excess of two hundred fifty thousand dollars ($250,000.00), then the award shall not be appealable and shall only be subject to such challenges as would otherwise be permissible under the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

**Self-Help Remedies and Small Claims Court.** This agreement to arbitrate does not limit the right of me or Lender, whether before, during or after the pendency of any arbitration proceeding, to exercise self-help remedies such as set-off, recoupment or repossession and sale of collateral, or to foreclose a mortgage, deed of trust, security deed or similar instrument or document, with or without a court action, or to bring an action (individually, and not on behalf of a class) to obtain provisional or ancillary remedies or injunctive relief (other than a stay of arbitration) to protect the rights or property of the party seeking such relief. The taking of any of the actions described in the preceding sentence by me or Lender or the filing of a court action by me or Lender shall not be deemed to be a waiver of the right to demand arbitration of any Claim asserted as a counterclaim, crossclaim, third party claim or the like in response to any such action. This agreement to arbitrate does not limit my or Lender's right to file an action in small claims court for Claims or disputes within the scope of the small claims court's jurisdiction.

| Loan No ████ | **PROMISSORY NOTE** (Continued) | Page 3 |

**Transaction Involving Commerce.** I and Lender specifically acknowledge and agree that this Note evidences a "transaction involving commerce" under the FAA, and hereby waive and relinquish any right to claim otherwise. I and Lender hereby acknowledge, agree and stipulate that: Lender is a multi-state banking organization engaged in interstate banking and commerce; Lender's deposits are federally insured; the funds used to fund loans such as this one are obtained, at least in part, through interstate commerce; and Lender regularly uses the services of businesses located in other states in making and administering loans and in conducting other transactions.

**Severability.** Except as provided in the following sentence, if any term or provision of this agreement to arbitrate disputes and waiver of jury trial is held to be invalid or unenforceable, the remaining provisions shall be enforced without regard to the invalid or unenforceable term or provision. If the prohibition against joinder of claims and class actions, or any portion thereof, is finally held to be invalid or unenforceable, the agreement to arbitrate disputes shall also be invalid and unenforceable, but the waiver of jury trial shall continue to be enforceable.

**Survival of Arbitration Agreement.** This agreement to arbitrate disputes will survive the payment of this loan, the termination of this Note, death, and bankruptcy to the extent consistent with applicable bankruptcy law.

**Waiver of Right to Jury Trial.** Unless this Note is governed by North Carolina law, WHETHER ANY CLAIM OR DISPUTE IS SUBMITTED TO ARBITRATION OR RESOLVED BY A COURT, LENDER AND I VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL WITH RESPECT TO SUCH DISPUTE TO THE FULLEST EXTENT ALLOWED BY LAW.

NOTICE: This agreement to arbitrate disputes limits or waives certain of my rights. With respect to Claims I am agreeing to arbitrate pursuant to this Note, I am waiving my right to bring a court action, and, unless this Note is governed by North Carolina law, I am waiving the right to have a jury trial on all controversies, whether settled by arbitration or by a court. When arbitration is invoked for Claims subject to arbitration, I will not have the right to bring or participate in any class action or similar proceeding in court or in arbitration. Discovery may be more limited in arbitration than in a court proceeding, and the right and grounds to appeal from an arbitrator's award are more limited than in an appeal from a court judgment. Certain other rights I have in a court proceeding also may not be available in arbitration.

**ATTORNEYS' FEES; EXPENSES.** I agree to pay reasonable attorneys' fees not exceeding fifteen percent (15%) of the unpaid debt after default and referral to an attorney who is not Lender's salaried employee. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $15.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: deposit accounts described in an Assignment of Deposit Account dated May 6, 2015.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

This Notice is required by Alabama law. In this Notice the term "you" means the Borrower named above.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BORROWER:

x /s/ Michael A. James (Seal)
MICHAEL A JAMES

LaserPro, Ver. 14.4.10.012 Copr. D+H USA Corporation 1997, 2015. All Rights Reserved. - AL E:\PROSUITE\CFI\LPL\D20.FC TR-060090 PR-CR01